# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Tanya T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 CV 4759 |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security,[1] | ) ) ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

Claimant, Tanya T. ("Claimant") brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's claim for Disability Insurance Benefits and Supplemental Security Income under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act ("the Act"). The Commissioner brings a cross-motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1382(c)(3). For the reasons stated below, Claimant's motion for summary judgment to reverse the final decision of the Commissioner [12] is granted, and the Commissioner's motion for summary judgment [19] is denied.

---

[1] Andrew Saul is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d). In addition, Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, only plaintiff's first name and the first initial of her last name shall be listed in this opinion.

# I. BACKGROUND

## A. Procedural History

On November 10, 2014, Claimant filed a Title II Disability Insurance Benefits ("DIBs") and a Title XVI Supplemental Security Income ("SSI") application alleging a disability onset date of November 15, 2012. (R. 68-69.) On her Disability Determination Explanation, Claimant had the following identified impairments: organic mental disorders (chronic brain syndrome) (severe); hearing loss not treated with cochlear implantation (severe); and affective disorders (non-severe). (R. 49.) Her claim was denied initially on April 23, 2015, and again upon reconsideration on August 15, 2015. (R. 68-69, 108-12.) Claimant filed a hearing request on October 13, 2015 pursuant to 20 C.F.R. §404.929 *et seq*. (R. 117-18.) On January 11, 2017, the ALJ issued a written decision denying Claimant's claims for DIBs and SSI. (R. 8-19.) Claimant appealed to the Appeals Council, but her request for review was denied on May 7, 2018, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1–5); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in the District Court.

## B. Claimant's Medical and Employment History

In 1979, when Claimant was thirteen years old, she was involved in a tragic car accident that caused her to suffer a severe head injury and resulted in the deaths of her stepfather and sister. (R. 271.) Claimant was in a coma for approximately two weeks and placed on a respirator, and she also suffered a stroke and seizure. (R. 271, 287.)

Claimant went to the Rehabilitation Institute of Chicago for outpatient visits in the early years following her accident. (R. 271-76.) Her hearing loss was documented initially, but it was not until her 1981 exam that she was noted to have problems learning as well as with auditory

memory and comprehension. (R. 271-73.) A psychology report dated August 8, 1981 documents that her parents were "concerned over an apparent pattern of mixed cognitive assets and deficits." (R. 275.)

Claimant underwent hearing examinations with audiologist Dr. Robert Beiter and at The Hearing Place over the years. (R. 307-14.) Dr. Beiter conducted an exam on December 9, 1999, and documented moderate sensorineural hearing loss in the left ear, a moderate rising to normal hearing in the right ear, and a sensitivity to higher frequencies. (R. 310.) On September 18, 2000, Dr. Beiter wrote a letter stating that he had been treating Claimant's hearing loss since 1989. (R. 277.) He categorized her hearing loss as moderately severe sensorineural loss bilaterally. (*Id.*) Although she used her hearing aids, Dr. Beiter found that her overall hearing, specifically in a background noise environment, was significantly compromised. (*Id.*) According to Dr. Beiter, Claimant met the eligibility requirements for her application for persons with disabilities because she was considered communicatively handicapped. (*Id.*)

A neuropsychological evaluation was performed on May 22 and June 19, 2002 by Drs. Jerry Sweet and John King. (R. 278.) Claimant had requested the evaluation to identify the current status and diagnosis related to her traumatic brain injury. (*Id.*) She was described as pleasant and cooperative, but she also presented as somewhat tangential and provided she scattered information at times. (*Id.*) Overall, Drs. Sweet and King opined that Claimant was at the low average range of intellectual abilities. (R. 282-83.) Although Claimant had these long-standing difficulties, it was noted that she was able to earn her Bachelor's degree and two Master's degrees (Spanish and Library Sciences); therefore, she was found to have compensated for her neuropsychological deficits quite well in some respects. (R. 283.) In the recommendations, it was documented that she qualified to be considered disabled from work

given her deficits in logical reasoning, attention to visual detail, verbal and non-verbal abstract reasoning, sustained attention, cognitive efficiency, executive functioning, and written and oral arithmetic. (R. 283-84.) Drs. Sweet and King also opined that Claimant likely needed assistance with money management and financial planning. (R. 284.)

On July 17, 2002, Claimant underwent an MRI that revealed an appearance consistent with chronic encephalomalacia, which correlates with the history of prior head trauma. (R. 285.) Dr. Robert Kohn authored a progress note on August 15, 2002. (R. 287-90.) At the time of the evaluation, Claimant was noted to be only recently obtaining an "understanding of her trouble with anxiety awareness and attention." (R. 287.) Her neurologic exam was essentially unremarkable, and her mental status exam revealed an anxious individual with a tangential thought process. (R. 289.) Dr. Kohn observed that Claimant had prominent spatial attentional boundaries in regard to conversation pragmatics. (R. 290.) Dr. Kohn included his impressions that Claimant had an anxiety disorder and cognitive disorder, and he referred her to rehabilitation. (*Id*.)

Dr. Linda Laatsch documented the results from tests perform on August 27, 2003 at the University of Illinois at Chicago's Department of Neurology and Rehabilitation. (R. 301.) Specifically, she noted that Claimant's visual attention for details was low average and not impaired; visual scanning with distraction was low average and not impaired; visual memory for designs was low average and within the high range for new sets of designs; visual scanning and accuracy was average; and that her problem solving was inconsistent. (*Id*.) Dr. Laatsch found a "nice improvement in [Claimant's] attention to memory of visual material." (*Id*.)

Claimant worked as a library shelver from 1998-2012. (R. 208.) She stopped working on November 15, 2012 when she was fired after a misunderstanding with one of her co-workers.

4

(R. 207, 223.) According to Claimant, she got along with her fellow co-workers and the main reason she applied for disability was because of the financial restrictions that resulted from her termination. (*Id.*) In her Function Report, Claimant wrote that her conditions did not limit her ability to work. (R. 215.) In a letter accompanying her Function Report, Claimant explained that her disability did not "start" on November 15, 2012, but that it instead began on April 10, 1979 (the date of the accident). (R. 224.)

On March 25, 2013, Dr. Beiter wrote a letter stating that Claimant's binaural hearing aids substantially improved her functional hearing in most situations and that the most difficult listening situations for her involved background noise and using the telephone. (R. 307.) An audiological report from October 9, 2014 identified Claimant's progressive loss of hearing as moderately severe to severe bilaterally. (R. 304-06.)

### C. Evidence from Agency Consultants

On March 23, 2015, Dr. Michael Stone examined Claimant and completed a clinical psychologist evaluation. (R. 316-19.) During the evaluation, Claimant was cooperative, but appeared agitated and depressed. (R. 317.) Dr. Stone noted that Claimant did not have loose associations, flight of ideas, tangentiality, or circumstantiality. (*Id.*) Claimant could recall objects after one minute, but not after three or five minutes. (*Id.*) On her mental status evaluation, Claimant evidenced impairments in her ability to perform calculations and in her general fund of knowledge, and that she had an estimated intelligence in the low average range. (R. 319.) Dr. Stone's diagnosed Claimant as suffering from depressive disorder, traumatic brain injury, cognitive decline, short-term memory loss, pain, and deficits in logical reasoning. (*Id.*) According to Dr. Stone, Claimant would be unable to manage her own benefits given her emotional adjustment and medical difficulties. (*Id.*)

Dr. Leslie Schier, ENT, completed an examination of Claimant on April 2, 2015. (R. 322.) She noted that Claimant had some difficulty understanding a one-on-one conversation with hearing aids but that she was able to produce sustained, audible and understandable speech. (*Id*.) Dr. Schier further documented that Claimant had moderate to moderately severe sensorineural hearing loss at 250Hz-400Hz, and mild sensorineural hearing loss through 8000Hz bilaterally. (R. 322-23.)

State Agency medical consultant Dr. Michael Schneider completed a mental residual functional capacity assessment on April 21, 2015, and found that Claimant did have understanding and memory limitations as well as sustained concentration and persistence limitations. (R. 52.) Specifically, he noted that Claimant was moderately limited in her ability to understand and remember detailed instructions. (*Id*.) She reported short term memory loss and, while her immediate memory was intact, her delayed recall was impaired at three and five minutes. (*Id*.) Accordingly, Dr. Schneider opined that Claimant was mentally capable of performing unskilled and semi-skilled work in a low pressure work environment. (R. 53.)

On August 14, 2015, Dr. Michael Cremerius completed a mental residual capacity assessment on reconsideration. (R. 80-82.) Dr. Cremerius' opinions generally aligned with Dr. Schneider's. (*Id*.) Dr. Cremerius opined that Claimant would be capable of understanding and remembering simple and detailed instructions, but that complex instructions should be precluded. (R. 80.)

### D.     Evidence from Claimant's Testimony

Claimant testified at the hearing on November 15, 2016. (R. 23, 29-38.) She explained that she lives by herself, and that her rent is paid by Niles Township's general assistance and her father. (R. 29-30.) Prior to her termination in November of 2012, Claimant worked at a library

in Evanston as a book shelver for 13 years. (*Id*.) She explained that she was terminated after she injured a coworker's shoulder while trying to leave a room the coworker had called her into. (R. 31-33.) When asked by the ALJ if she could do her old job if it was offered today, Claimant testified that she believes she could do it. (R. 35.)

Claimant last saw a therapist for mental health reasons over ten years ago. (R. 34.) She saw an audiologist in June of 2016 and was given a "boost," which allows her to hear and understand people better. (R. 34-35.) She testified that she wore the hearing aids all day at work "[t]o minimize people's impatience." (R. 35.) Upon questioning from her attorney, Claimant explained that she gets sidetracked doing her chores. (R. 37.) She further testified that while working, she would get distracted and begin reading books instead of putting them away. (R. 37-38.)

  E. **Evidence from the Vocational Expert's Testimony**

A vocational expert ("VE") offered testimony at the hearing. She described Claimant's past work as a "[l]ibrary shelver, . . . light, medium as described." (R. 39.) The ALJ gave the VE the hypothetical of someone who was 51 years old, with the work experience and education of Claimant, who had no exertional limitations, was limited to jobs that were simple and detailed, involved one-to-two step instructions, could do no jobs requiring excellent hearing, should avoid concentrated exposure to noise, and could not have fast-paced or production quotas. (R. 39-40.) Under that hypothetical, the ALJ asked the VE whether such an individual could perform Claimant's past work, and the VE testified that such an individual could. (R. 40.)

Claimant's attorney then asked the VE what amount of off-task time would be allowed, and the VE testified that no more than ten percent was acceptable. (R. 40.) When questioned if it would be an issue if the ten percent was focused at one particular time, the VE testified that the

7

equivalent of around a forty minute break would not be tolerated. (R. 40.) Claimant's attorney then asked, based on the VE's observations of Claimant at the hearing, whether she would be comfortable placing someone who expressed herself as Claimant does in her past work. (R. 41.) The VE explained that all she could say was that it would be a problem in the workplace if someone became a distraction to others. (R. 42.) The VE also testified that Claimant's previous job was "perfect" for someone with a reduced level of hearing because there was not a lot of exposure to noise nor any requirement of excellent or good hearing. (R. 42.)

## II. LEGAL ANALYSIS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Consequently, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983).

This Court must consider the entire administrative record, but it will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel.*

*Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Court will focus on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to her conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate [her] assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.' " *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

B.        **The Standard For Proof Of Disability Under The Social Security Act**

In order to qualify for DIBs, a claimant must be "disabled" under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. Before proceeding

from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id*. at 886.

### C. The ALJ's Decision

The ALJ applied the five-step analysis required by the Act. At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of November 15, 2012. (R. 13.) At step two, the ALJ found that Claimant had the following severe impairments: bilateral sensorineural hearing loss and cognitive disorder. (*Id*.) Next, at step three the ALJ found that Claimant did not have an impairment or combination of impairments that meet or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.) At step four, the ALJ found that Claimant had the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. (*Id*.) Specifically, she could understand, remember and carry out simple and detailed one-to-five step job instructions and tasks, but she could not perform work involving fast-paced or high production quotas; she should avoid concentrated exposure to noise in a work setting; and she could not perform jobs requiring excellent hearing. (*Id*.) The ALJ then found that Claimant was able to perform past relevant work as a library shelver, noting that the work does not require the performance of work-related activities precluded by the RFC. (R. 18.)

Therefore, the ALJ found that Claimant had not been under a disability from November 15, 2012 through the date of the decision, January 11, 2017. (R. 19.)

    **D.    The Parties' Arguments In Support Of Their Respective Motions For Summary Judgment**

In her motion for summary judgment [12], Claimant first argues that remand is appropriate because the ALJ did not provide a proper evaluation of Claimant's symptoms, specifically by failing to account for Claimant's testimony about how her concentration and hearing impairments caused problems in her daily life. Next, Claimant asserts that the ALJ did not properly analyze non-treating medical opinions. Lastly, Claimant contends that the ALJ did not properly evaluate her RFC by failing to account for limitations resulting from her hearing loss as well as her moderate difficulties in concentration, persistence, or pace.

The Commissioner responds [20] by arguing that the ALJ properly addressed Claimant's hearing loss, contact with others, and limitations in concentration, persistence, or pace. Accordingly, the Commissioner contends that the ALJ's RFC and subjective evaluations were supported by substantial evidence. Additionally, the Commissioner argues that Claimant fails to account for the fact that she maintained employment for 13 years and provided no evidence that her hearing or cognitive abilities declined after her alleged onset date of November 15, 2012 such that she could no longer perform her past relevant work.

    **E.    The ALJ Failed to Properly Account for Claimant's Moderate Difficulties with Regard to Concentration, Persistence, or Pace When Posing Her Hypothetical to the Vocational Expert**

In her opinion, the ALJ found that Claimant had moderate difficulties in concentration, persistence, or pace. (R. 14.) The ALJ notes that Claimant reported difficulty remembering and retaining new information and references Claimant's previous diagnosis of attention deficit

disorder. (R. 14.) In the hypothetical posed to the VE, however, the ALJ did not address these limitations, or other limitations in the record, in detail.

The Seventh Circuit has repeatedly found that the ALJ must "orient the [VE] to the totality of a claimant's limitations, including deficiencies of concentration, persistence and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730–31 (7th Cir. 2018) *as amended on reh'g* (Apr. 13, 2018), *quoting O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). The Seventh Circuit has further rejected the idea that "confining the claimant to simple, routine tasks and limited interactions with others adequately capture[] temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) (*citing Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (collecting cases)). "[T]he most effective way to ensure that the [VE] is apprised fully of the claimant's limitations is to include them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619. While the ALJ is not required to use the precise terminology of "concentration," "persistence," or "pace," the Court cannot assume that the VE is apprised of such limitations unless she has independently reviewed the medical record or has heard testimony that directly addressed Claimant's limitations in concentration, persistence, or pace. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 857, *quoting O'Connor-Spinner,* 627 F.3d at 619 ("The ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform'").

Here, the ALJ included in the hypothetical to the VE an individual who was limited to jobs that are simple and detailed, one-to-two step instructions only and could have no fast-paced or high production quotas. (R. 39-40.) The ALJ makes no further inquiry regarding potential restrictions stemming from Claimant's limitations in concentration, persistence, or pace. (R. 39-

42.) Based on that one hypothetical, the VE opined that Claimant could perform her past work as a library shelver. (R. 40.) The ALJ subsequently agreed, opining that Claimant could perform her past work after assessing Claimant's RFC limited her to understanding, remembering, and carrying out simple and detailed (one-to-five step) job instructions and tasks, but no work involving fast-paced or high production quotas. (R. 15.)

The ALJ's hypothetical to the VE does not sufficiently address Claimant's moderate difficulties with concentration, persistence, or pace because it does not discuss all of Claimant's limitations identified in the record. *See O'Connor-Spinner*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart*, 561 F.3d at 684 ("[W]hen an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."); *see also Indoranto v. Barnhart,* 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [s]he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").

Although Claimant's medical history is not consistently documented in detail, specifically with respect to records after the alleged onset date, the ALJ still had a responsibility to fully address Claimant's moderate limitations instead of merely using the terms 'simple and detailed' and 'one-to-two step instructions' in her hypothetical to the VE. "[I]n most cases employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted v. Berryhill*, 923 F.3d 472, 476–77 (7th Cir. 2019) (internal quotation marks omitted); *O'Connor-Spinner,* 627 F.3d at 620; *see also Moreno,* 882 F.3d at 730; *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[O]bserving that a person can perform simple and repetitive

tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.").

In sum: the ALJ's failure to "accurately capture [Claimant's] documented difficulties with concentration, persistence, and pace" within her hypothetical constitutes a "failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC" and requires this Court "to remand for further proceedings." *Yurt,* 758 F.3d at 859; *Moreno,* 882 F.3d at 730; *O'Connor-Spinner,* 627 F.3d at 620. Beause a remand is required for this reason standing alone, the Court will not address the remainder of Claimant's arguments.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment [12] is granted, the Commissioner's motion for summary judgment [19] is denied, and the decision of the ALJ is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order. Specifically, on remand, the ALJ must properly account for Claimant's limitations in concentration, persistence, and pace in her hypothetical to the Vocational Expert.

**ENTERED:**

**Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: October 15, 2019**